North LV Police Dept Thank you for waiting for so long. You're the last but not the least. This may or may not take the full 20 minutes. May it please the court, Cpl. Tajira here on behalf of the Appellants, Defendants, Correctional Medical Services, and the deceased Hal Chesler. Before I begin, I would like to ask that if possible, I'd like to reserve approximately three minutes for rebuttal. Additionally, you may hear me refer to Correctional Medical Services as CMS also in the briefs as well. So if I go back and forth, that means the same person. Could you tell me why we have jurisdiction to hear this appeal? Sure. First, with regard to the Correctional Medical Services, when the lower court issued its order in February of 2007 bringing Correctional Medical Services back in, it effectively ruled that Correctional Medical Services is not entitled to qualified immunity. In our motion for summary judgment, that was Where is the final order here that there was no Rule 54B certification sought and none issued? Procedurally, I don't understand why we're here. We filed our Notice of Interlocutory Appeal pursuant to Rule 4 based on the February 2007 order. But you didn't get a Rule 54B certification from the district court. That's the problem I'm having. Well, when we filed the Interlocutory Appeal, it's my understanding that you can file an Interlocutory Appeal even if there isn't a final judgment because we filed the Notice of Interlocutory Appeal, and that we can do without a final judgment. If what you've got is a summary judgment denying qualified immunity. Yes. And there was a motion for summary judgment that, well, first it was granted with regard to Correctional Medical Services. In that motion for summary judgment, we did argue that Correctional Medical Services and all of the health care defendants were entitled to qualified immunity. What if I were to read Judge George's order, his later order, I'll call it his corrective order, so that it's internally consistent? At the moment, it seems to me internally inconsistent because what he says is, well, you know, back in 2003, I really didn't address or even think about those state law claims. I didn't address them, and I just want to get back to status quo ante where I hadn't even thought about them. I therefore deny the motion for summary judgment, which I previously granted. How about if I add two words to make it consistent? He says, I therefore deny without prejudice the motion for summary judgment. That is to say, I haven't addressed them yet. I didn't address them then. I'm not addressing them now. And I haven't decided them yet. That's kind of what I think he did. So if I understand your question, are you talking about adding those two words without prejudice to the first order? His corrective order, the one that you're appealing from. Okay. Well, the fact is that after he issued that order, judgment was entered. That judgment, all parties understood it to be that it was a judgment that was in favor of correctional medical services, in favor of Nurse Arguello and Nurse Vicki Hobson, and against the plaintiff. That judgment, what the judge has done in that February 27th, or the February 2007 order, is not just changed, changed the, revised the order as the opposing counsel, as Mr. Smith represents, but what he did was he actually amended the judgment. Well, he actually vacated the judgment and amended it. So he's gone beyond. But he revived some claims. He didn't dismiss any, nor did he say they were meritorious. He just said, as I'm reading, he said the court's order dated August 25th, 2003, is hereby modified to the extent that CMS's motion for summary judgment is denied as to the state law causes of action. He was correcting what in his mind was a clerical error, as I read it, and he was just putting it back where it was. He didn't say, first of all, it's only state law causes of action that are revived, and I'm not clear from the record whether they involve qualified immunity. Do they involve state qualified immunity? Yes. Well, state qualified immunity. And to go to the first point of your question, he didn't just modify it. He actually overturned his previous decision, and he --. He said he never intended to dismiss the state law claims. But he did. That's the thing. He actually, it's very clear in his order that he addressed. I don't know if that's for you to say. I mean, he didn't. So then you appealed this order right away without ever getting him to rule on whether there was qualified immunity on the state law claims. Well, when correctional medical services was dismissed, we didn't have any grounds to appeal it because we were the dismissed party. Right. Now, when we're being brought back in in February of 2007, nearly three years later. Yes. That's when our time to appeal, we assert, is right. But he hasn't ruled against you on anything. He's just said that when you thought the state law claims were dismissed, you were wrong. So now you're back in. You've got to answer these state law claims. But he didn't say your defense wouldn't be meritorious. Well, he has, in fact, ruled that correctional medical services is not entitled to qualified immunity because he has brought CMS back into the lawsuit. Well, he just said he has brought them back in. Has he ruled someplace else they're not entitled to qualified immunity? Well, in the motion for summary judgment, correctional medical services spent several pages arguing that they are entitled to qualified immunity. Well, first of all, the plaintiffs did not oppose any of those arguments. The judge in his order granting that motion for summary judgment as to CMS did not specifically address that. But I don't think that he needed to. If he was dismissing correctional medical services on other grounds, then, you know, he can appropriately say I don't need to address these other issues because I am ruling a dismissal in favor of CMS on unrelated issues. But by bringing correctional medical services back in, the judge has now ignored the fact that qualified immunity was raised in the motion for summary judgment. The plaintiffs did not oppose those motions. And according to our rules. Still need an order. Well, there was an order. The February 07 order is the order that brought correctional medical services back in and overturned the decision in the previous order from the motion for summary. That was regarding the motion for summary judgment. And so those. What's the date of the previous order that you say that refers back? August 25th, 2003 was when the motion for summary judgment was granted on behalf of correctional medical services. And judgment was entered on that same day immediately following that order. And the judgment is very clear that it's entered as to correctional medical services and against the plaintiff. Can you can you help me? Sure. I'm looking at the court's February 7, 2007 order, the six page order. I'm sorry. It was signed on February the 6th, apparently. It was signed on February the 6th. And it appears to me on page four of that order that the court is citing to rule 60B and and to the need for 54B certification. And he talks at line 17 about the fact that the clerk of court entered judgment for CMS and the other defendants. But the court had made no express determination under 54B, nor had expressly directed the entry of judgment. And then he goes on at the top of page five to say under these circumstances, the plaintiff is correct that final judgment has never been entered in favor of CMS. And that the plaintiff could, I think he meant either, but he says neither have previously appealed the ruling as a matter of right, nor sought relief from judgment pursuant to rule 60B. I guess actually he did mean what he said. So why is that not a non-final order? How can you possibly say that this is a final judgment if the court is saying plaintiff's right and you're wrong? Well, like I said, in the initial order, the judge did not get to the issues of qualified immunity. Didn't get to these other issues raised by the motion for summary judgment because he had decided there was good enough reason to dismiss correctional medical services on other grounds. But as Judge Bertelsman has been questioning you, if he intended to rule one way or the other, that would be inconsistent with him saying I never intended to enter a final judgment here. The way that the order was written, it sounds that at that point he did intend to dismiss correctional medical services. Not what he says. Okay, fine. In the language that I just read to you. Now I believe that that's, he's changed his opinion. But going to the bigger picture of what that means when he changes his mind, he is now ignoring the argument that was unopposed by the plaintiff regarding qualified immunity. Maybe I can help here. The issue is not whether the 2003 order is appealable because you're not appealing from that. Correct. The issue is whether the 2007 order is appealable. You're reading the 2007 order as denying your motion for summary judgment. Right. You move for summary judgment in part based upon qualified immunity. That is correct. You're arguing that a state law qualified immunity defense, when rejected as part of a motion for summary judgment, is appealable as an interlocutory order. Right. That's a, that I think is correct law under Cloral's, a case that neither of you has cited, but I think that is the law. So the, and you don't need a fool 54, you don't need anything. All you need is the judge denies the motion for summary judgment when that summary judgment is based upon an assertion of qualified immunity. But I don't want to read his order that way. I, even though as a literal and technical matter, it may well say denied and in there is your motion for summary judgment based upon qualified immunity. The rest of his order makes me think that what he's really saying is I haven't yet thought about that issue. And as soon as I think about it, then I'll give you a ruling. Which is why I say I want to read his deny as deny without prejudice. Well, unfortunately, that's not what his order says. Well, his order says two things that I think are inconsistent. Well, and, and if you look at how his previous order was based, was, was written, and if you look at the 2007 order, to me it's pretty consistent that what he means is he is making a decision. And it's a final decision. And it's not without prejudice. It's, it's with prejudice. If you want, if you want me to decide whether you've got qualified immunity, you're going to lose. How about, how about the other part about the administrator? You're arguing that part too? Now, how is that a final order? Because he's, he allows somebody to substitute an administrator. And, and how is that a final order or, or subject to an interlocutory appeal? We submit that with regard to the deceased Hal Chesler, if you look at the three prongs set forth by the United States Supreme Court in Cohen versus Beneficial Industrial Loan Corporation, that those three prongs are met when we look at the order that was issued with regard to Hal Chesler and the fact that this appeal is right based on those three prongs. The first being that this issue is conclusively determined, the judge's order conclusively determines a disputed question of fact. With regard to the February 2007 order, it conclusively determines that Mr. Smith's appointment of a personal representative was timely, even though it was filed nearly two years after the previous personal administrator of the estate withdrew. Now, this is a new situation where the plaintiff is appointing, getting the personal representative appointed. Right. And that is what the judge had ordered. Did Chesler work for your client? Chesler, Hal Chesler was. But he is saying it can proceed, it can proceed against Chesler. He's not saying the estate is liable or anything. He's just saying it can proceed. Because the first administrator quit, now we're going to substitute another one. It's a technical matter. He isn't saying the estate is liable for anything or that you're liable for anything. He's just saying we now got a party again and we can proceed. Well, if you look at the orders, it does say that he is asserting that the representative of the estate would be a liable party. That is what he's saying. If there's grounds to hold him liable, yeah. But he doesn't hold that, does he? I don't see any amount for judgment there or anything. He's just saying he can substitute the administrator. Well, no, I was just going to follow up on that. I mean, I think the concern that I have is you've got to have a party to represent the estate. The estate itself is not a party. It's the personal representative who represents the estate. And without a real live person there to represent the estate, then the court can't take personal jurisdiction over the estate. That's correct. That's been our position all along. Right. So just because we're substituting parties here because Ms. Ridgey or whatever her name is has resigned, all this order does is say you can appoint another one. Well, but the judge's determination of granting them an unlimited amount of time to appoint an administrator and then the determination that that person will be liable for. I don't think he said they'll be liable unless the estate is liable. Unless Mr. Chesler did something wrong that makes his estate liable. And that goes to the second prong. I don't see that he's saying that. The judgment says you are liable. For the defendant, it says the complaints are dismissed. If it's for the plaintiff, it says the plaintiff may recover X number of dollars or injunctive relief or whatever it's about. But something that's an interlocutory order allowing you to substitute a new administrator for an old administrator is not, in my mind, a final order. Because he hasn't said the administrator here is a sort of tech. It's a backward situation because the estate has no motive to appoint an administrator because they're going to get him sued. So the plaintiff's got to get one appointed. And they did. And then that person resigned. They're just substituting a new one. It's not a final order in my mind. Tell me how it's a final order. Well, we submit that this is not necessarily a final order, but it's in that small categories of decisions that are appealable without a final order because of the three prongs that are set forth in that Cohen case. Well, are you relying on, I'm still pulling up on page five of the court's order, looking at line nine. Accordingly, the court will grant plaintiff's motion for clarification in order that the August 25, 2003 order be modified to deny CMS's motion for summary judgment as to the plaintiff's state law claims. Is that what you're hanging your argument on? No, I'm actually, I've moved on to the estate of Hal Chesler. No, no, no, no, no, no. I'm still hung up on the earlier, I'm sorry. That's okay. All right. Is that why you're claiming that you can bring an appeal to challenge the qualified immunity ruling? Because what he's saying there is he's denying your prior summary judgment motion to dismiss the state law claims because you have qualified immunity under Nevada law. Yes. That was the first portion when we were talking about correctional medical services. Yes, that's correct. Okay. And that's how I stated that it became right when he changed his order, when he issued his order in February of 2007. Maybe you're right. Maybe we should address that now on the merits and clean that up. So that when he does, because we send it back and he says, then when you do make the summary judgment motion and when he then does deny it, you've got another one of these darn interlocutory appeals. This case then drags on for another three years. Oh, goodness. Okay. It is an old case. But going back to the estate of Hal Chesler, like I was saying, this is one of those small categories of cases where it is right for appeal, even though there isn't a final judgment, just based on the fact that it meets the three prongs. The second prong is that it resolves an important issue completely separate from the merits. Now, we're not talking about the merits of the case. What we're talking about is the procedural aspects that come into play when there is a decision on the merits. The fact that the plaintiff hasn't moved or hadn't moved to amend their complaint to appropriately appoint the administrator of the state, which the judge determined that they were the ones that were responsible of doing, that becomes an appealable decision when the judge denies it at this point. Because that brings us to the third prong, that this decision is effectively unreviewable on appeal from a final judgment because the claims right that we're after here is the deceased, the estate of Hal Chesler, which doesn't exist at this point as we stand here today, would be required to undergo litigation to proceed through trial and only to come back here afterwards and to learn that, in fact, the estate didn't exist and wasn't properly named in the lawsuit? Well, I disagree with your analysis as a matter of probate law. I think the estate exists. It's just a question of who's the administrator. Take something where there's no litigation. Someone dies, they appoint their father as administrator. The father dies, so they appoint cousin as administrator. The cousin dies, so they appoint a bank as the administrator. But the estate existed all along. The problem with this is the estate is only existing as a defendant in a lawsuit. So it was probably an insurance policy or something that would cover the estate's liability. But the estate may have no other assets, so the relative's got no motive to appoint this administrator. So to have somebody to be a party in the court, the plaintiff has to appoint the administrator. And they did, and the administrator resigned. So the secretary and the plaintiff's lawyer's office, the administrator resigned. Now they're just appointing another one. The estate's existed all along. But the estate, there's no ñ the Nevada law requires that there has to be a person that represents the estate, and the estate has no person representing them. They must have appointed a new administrator. They haven't as of yet. The court said they could. Yeah, they haven't as of yet. And they hadn't for the three ñ or the ñ from August of 2005, or actually May of 2005 when the ñ It would be the plaintiff's business to get it and get somebody appointed. Yeah, and you can make ñ if they never do it. But it's not final orders. If they never do it, you can make a motion to dismiss for failure to prosecute. Yeah. Excuse me? Then you can make a motion to dismiss for failure to prosecute. Well, no. They don't do that. We did bring the motion to dismiss, and that's why we're up here today. Okay. Okay. Why don't you sit down, and we'll hear from him, and then we'll allow you a chance to respond. And I was wrong about this might not take more than a minute. You'll see this question on the Kentucky bar exam. My friend of mine is a bar examiner. May it please the court. My name is John Funk. I apologize for my voice. I represent the appellee, the plaintiff in this case, Jeff Smith. I'd actually written out an entire direction which I wanted to go, but then as I realized I was listening to the court, I didn't want to just kind of overrun and give some repetition here, which it's clear that the court understands that the issue that was before the district court was what to do with the state tort causes of action. It was our understanding when the judge made his original order back in 2003 that he specifically was addressing in dismissing the 1983 causes of action. At that time period, he also looked at the issues of qualified immunity. He allowed CMS out because he realized that we were proceeding forward under the theory of response beyond superior. That's the issue which we were addressing. The district court found that we did not have a basis under 1983 to bring a response beyond superior cause of action against CMS. Therefore, motion for summary judgment was granted in their favor. It was our understanding that CMS still remained in the entire case because we still have the response beyond superior or the state law causes of action. Those were dealing with negligence, negligence supervision and training, and just responding to superior in general with Mr. Smith. Do you disagree that CMS moved for summary judgment on grounds of qualified immunity under both federal and state law in 2003? Well, the issue is although they moved for summary judgment on that basis, it was on both federal and state. If that's the case, then why isn't this sentence that I'm so hung up on, on page 5, the answer that Judge George is clarifying his 2003 order to modify it so that he is now in 2007 denying CMS's motion for summary judgment as to the state law claims, which would include the claim of qualified immunity under Nevada law? I believe that he does do that in this order. And if that's the case, then doesn't that then give us jurisdiction to address CMS's qualified immunity claim? Well, arguably the issue that we have though is I think that his order states that I haven't made that decision, as you've pointed out. I'm only saying that I do not believe that. But if he's denied the summary judgment motion, the Supreme Court tells us that qualified immunity is so important that it falls as one of those narrow categories of cases under the Cohen doctrine that gives the Court of Appeals interlocutory jurisdiction to entertain this appeal. Does it not? It may. It may. But the issue is that I don't think that they've --. Well, if it does, then we have to address here today the question of whether or not CMS is entitled to dismissal on grounds of qualified immunity under Nevada law. It was our position coming into this that the original reading of the Court was correct in terms of that the judge had not made a final order on those issues. You don't think he intended to rule on the merits of the state qualified immunity? Yes. There's no opinion anywhere in there that discusses those merits or demerits. That's true. That's true. So that would be the more reasonable interpretation would be he just intended to correct the clerical error and correct the misapprehension that CMS was totally out. That's exactly. That's our position. The next move should have, as I see it, the next move should not have been to appeal, but to make a motion for summary judgment on the basis of the qualified immunity. Exactly. Which they failed to do so. Instead, they immediately filed an appeal, which we have stated in our position is that this Court lacks jurisdiction to hear this. But, you know, that's going to be a royal pain because --. No doubt. We're going 10 years into this. We're headed for year 15. I can see it. That is to say if we say no jurisdiction now because we read this order as saying we deny it without prejudice because we actually haven't thought about the state law and the qualified immunity in the state law business. Okay. So now we get a motion for qualified immunity dismissal by CMS. He denies the motion. He says, no, we're going forward for trial. Well, here we are again. We're up on an interlocutory appeal on qualified immunity for CMS. And meanwhile, your suit just sits there. You know, I'm looking at another three to four years just based on that, maybe two. I don't know. But we're looking at some delay. But the other issue is, well, you still have to look at it. We're still dealing with the state tort causes of action, which were basically what was the substance of the appeal that was coming in here today. When we filed our motion for clarification, it was specifically to address the issue of respondent superior. If you go back in the brief, they've actually attached it in the extra records. That's all we wanted the judge to do is to say, well, wasn't it true that Hal Chesler was working as an employee of CMS? And you've pretty much said that, you know, he's got the deliberate indifference here. He's failed to go through and he was negligent in terms of his duties. So wouldn't that be imputed to his employer? It seems to me that you've got two concerns here. One is respondent superior. And the other is collection, ability to collect on a judgment. If Hal Chesler is liable to your client and you get a judgment against the estate of Hal Chesler, you may or may not have an asset to execute on. I'm guessing it's a modest one, but I don't know that. I can't tell from the record. Actually, you should know since it's your former secretary who was the personal representative of the estate. But that aside, you would then be frustrated in your ability to collect on that judgment because CMS might or might not be responsible for indemnifying Mr. Chesler. But under the court's ruling or Nevada law, you're probably not going to be able to go against CMS directly. Have I missed something in my practical assessment here? Well, I believe that CMS is attempting to hide behind the estate of Mr. Chesler here, which is part of the reason why they've got qualified immunity under Nevada law. It doesn't need to hide behind the estate of Hal Chesler. It can hide behind the statute. But, again, that wasn't an issue that they raised at this point. I shouldn't say that that was addressed by the judge. Well, they said they raised it in 2003, and he says he's denying it, and so now they're here on appeal saying he was wrong to deny us qualified immunity under Nevada law. Did you make a motion to dismiss the appeal before it was filed? I mean, after it was filed. If you thought from the beginning in a final order, why didn't you make a motion to dismiss the appeal? You can raise jurisdiction at any time, but as has been pointed out, you could have saved yourself a year or so. Well, we believe that when the court initially came out and had asked them to file the motion stating that they weren't sure if they even had jurisdiction to file the appeal, that that had set forth that, well, we've argued the entire time that they haven't had the appeal. I don't believe that we did file the motion to strike it. I mean, I don't know in terms of if you want me to address the issues with qualified immunity. It's our position that we. What about the appointment of the administrator? Do you think that's a final order? No, it's not, Your Honor. How do you interpret that order? Well, the appointment of the administrator in this case is precisely what you've stated. It's just a substitution of one individual with another individual. And the judge had looked specifically, I believe it was at 54 or at. Rule 25. Oh, yeah, Rule 25, thank you. And that does have a time limit in it. It does. It seems to me that that applied to the first appointment, first substitution. And after that, once you've got the estate created, and maybe your secretary quit so you wanted to get somebody else, or whatever was the reason she withdrew. But once the estate, go to your probate court, get somebody appointed, the estate is there, and it's just a matter of substituting parties like you substitute the secretary of human services when they change. And we actually had filed a motion with the court to substitute once we found out, which they were claiming at that point it was too late, so that's when they brought their motion to dismiss. It seems to me the time limit only applies to the first appointment. And that's our position as well. And the judge had stated that we had complied with that provision, that we had timely filed within the 90-day period, that we had also gotten extension, and the judge had actually given us, up until I believe it was October, we were in terms of being able to appoint an initial representative, which we did. Did anything happen in the estate except for the appointment of a special administrator? In terms of? Has there been any kind of an inventory filed of the assets of the estate, any of the normal steps you'd take in a probate? That I don't know. So we have no idea whether there are any assets in this estate or not. Is the estate covered by the employer's insurance? And that's my guess is why you're fooling about with this. I'm not sure of either. You haven't found it, have you? So. Again, I think we cited in our brief to the case of Allaire v. U.S. Trust Co., where the defendants in that case had actually moved to set aside judgment, and they were relying upon FRCP 59 and 60. But in that case, the court had found that there was no trial or no final judgment, and that that motion should have been made pursuant to FRCP 54B, which we don't have in this case a final order, a final judgment. And it's not been clarified in our opinion as to those issues. Are we talking about the administrator now? Are we talking about the qualified immunity? This is going back to I believe it's just the issue of like with qualified immunity, those sorts of. But do you need a 54B certification where the district court enters summary judgment denying qualified immunity? No. I guess maybe I should clarify that this is dealing with the like the state law causes of action. And, again, when we raised our motion, our focus was entirely on the issue, as I mentioned before, of responding out superior, the negligence causes of action, those torts. This is, we're not dealing with the qualified immunity case is our position. The issue here involving CMS is one that's separate from it. But I'm trying to understand what it was that the, what CMS was raising in its summary judgment motion. And I don't hear you disputing that they moved for summary judgment under the Nevada statute that grants CMS qualified immunity. Well, the issue, though, is if you're looking at that point, our contention is any of those issues that were dealing with qualified immunity were previously addressed in the original, in the original order back in 2003. But if they won, they wouldn't have any reason to bring an appeal. You would have had an appeal. I agree. I agree. And that was our position was that he fails to address those issues dealing with the state tort causes of action, dealing with negligence, negligent training, negligent supervision, which is what the judge actually points out in his order, is that we did have those issues that were raised, and I didn't rule on that at the time. He's basically saying I didn't rule on that, so I'm, to that extent, I am. If he didn't rule on that and he didn't rule on qualified immunity, what did he rule on? He had a summary judgment motion pending before him which he denied. What was it that he denied? He denied the, it was our position that he ended up denying at that time period in 2003, the 1983 causes of action, which would have included the qualified immunity. Okay, that's federal qualified immunity. But again, you're also, and here we're believing, it's our contention that the CMS doesn't, they're a private corporation, and I don't know, it's our position that qualified immunity isn't the issue on appeal, because that should have been addressed later on. Maybe I can help. When I say that, I usually totally, I'm totally unhelpful, but let me try this. On page 23 of the blue brief, there is one paragraph, and one paragraph only, that argues the merits of whether or not qualified immunity is available as a defense, and summary judgment should have been granted on that basis. And as I understand this, in the Nevada statute, and as I understand this paragraph, CMS has qualified immunity if it did not act, if it exercised due care. If there's some dispute as to whether it exercised due care, then I think we can't have summary judgment, because somebody has to resolve whether or not they exercised, the CMS exercised due care. Is there a dispute as to whether or not CMS exercised due care? There is, Your Honor, and that's In other words, okay, summary judgment properly denied as to qualified immunity, that's a factual question to be determined at a later time. Exactly. Okay. Sorry. If you want me to address what those are, I'll That would be a good time to stand up. Yes. And that would be a good time to stand up. Yes. Well, Your Honor, I think I can help clarify Why have I heard that? I think I can help clarify and actually sort of hopefully appease this Court's concern about It is a terrible thing. I've been learning this. Well, about addressing qualified immunity, because as you pointed out, one of the concerns would be that if the lower court, if this is remanded to the lower court to decide, and if they deny it, then we once again have a right to bring in a locatory appeal. Let me ask you this. Is it a disputed question of fact whether or not your client's CMS exercised due care? I believe not. I believe that, well, first of all, I think it's easily resolved by pointing to the fact that it was raised in our motion for summary judgment, and plaintiff never brought any arguments in opposition to it. What was raised? The issue of qualified immunity was raised in our motion for summary judgment as a reason why motion for summary judgment should be granted on behalf of the medical defendants. But I'm asking you a different question. I'm asking you, is there a disputed question of fact as to whether your client's CMS exercised due care? No. None at all? There's no evidence in the record from which we could conclude or which a jury could conclude that they did not? No. I believe that, as we put in our brief, I believe that the question is clear, that we did everything appropriately, and we did not. Well, that's what you wrote in your brief, but that's just your brief. Well, the brief cites to the facts. The brief cites to the arguments that were raised in the motion for summary judgment, which, therefore, cites to the facts. Well, there's evidence on the other side. There's evidence on the other side that says they left that guy unattended for 36 hours. Well, then we look to what they put in their opposition to the motion for summary judgment. They never raised any arguments to oppose the fact CMS is not entitled to qualified immunity. So on that basis alone, they have conceded that, according to our rules, if you don't oppose a motion, then you don't oppose a portion of it. Well, you know, I feel more comfortable with that argument if Judge George said anything about that. I mean, it is available to a district judge to say, I'm not going to look down into the record. I'm going to look only to what you put into your moving papers, and I'm going to hold you to that, even though there may very well be evidence in the record that supports you. Judge George said nothing of the sort. I agree that he didn't. I believe, however, that he didn't need to because he found other grounds to dismiss correctional medical services. So he just didn't get there. But the fact is, I mean, even if we were to submit the motion, the briefs, as they were submitted back in 2003, they didn't raise any opposition to it. And if you don't oppose it, you consent to it being granted. We would then be reversing Judge George on a ground that he never raised. He denied summary judgment to you. And we can affirm on any ground, but for us to reverse him on that ground that he never raised, I think would be probably overreaching of our appropriate role. Well, it's before this court now. Okay. Are the briefs in the 2003 summary judgment litigation in the excerpts of record before us? Yes, they are. Okay. So we can look and see whether or not the plaintiffs joined the issue of due care. You can. All right. But I have the same hesitation Judge Fletcher just articulated. If, as I read this, page 5 of the 2007 order, if what he's saying is I deny it, it being summary judgment on qualified immunity, to reverse that, on what ground could we reverse it? On the fact that he is now saying that plaintiffs' non-opposition to the motion for the part of the motion with regard to qualified immunity means nothing. Well, all he said is I deny it. He doesn't say on what basis he denies it. He just says in 2007, I deny it. I read that denial to incorporate everything that was raised in that motion, which part of it was the qualified immunity. Can you also read it to the statement by Judge George that he's unwilling to look into the underlying record and he's only willing to look at the basis on which the motion was opposed? Could you repeat that? Sorry. I missed that part. I'll pass. Okay. All right. And to further clarify, with regard to what is in our brief, you mentioned that we only address on page 25 of or actually I think it was page 23, there is a further discussion with regard to qualified immunity under the State law on page 18 of our brief. Oh, okay. I stand corrected. And if there are no further questions, I respectfully submit everything else on the briefs. Okay. Thank you very much. Thank you, Your Honors. The case of Smith v. Correctional Medical Services is now submitted for decision. That concludes our argument for this morning. Before we leave the bench, I do want to say one thing, however, and that is I know we've got some law students, externs, who have been patiently waiting not to present their cases but patiently waiting to see if they can learn something. My guess is you've learned quite a bit as you've listened to these arguments. After the conclusion of our conference, and my guess is it will probably take us, oh, half an hour? At most. At most. I think Judge Berlin is otherwise engaged, but Judge Tallman and I will come out and talk to the students and we'll tell you all the secrets of the brotherhood and sisterhood. But we won't talk about the case. No, no. We won't talk about the case. It's not worth your while sticking around. You're not going to learn anything. Thank you. All right. This court for recessional. Thank you, gentlemen.
judges: Fletcher, Tallman, Bertelsman